## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                             No. CR 16-580 RB

JOSE REMBERTO GUZMAN-
DOMINGUEZ,
        Defendant.


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Jose Remberto Guzman-Dominguez's Motion for Judgment of Acquittal, or in the Alternative, for New Trial. (Doc. 136.) The Government opposes this motion. (Doc. 137.) Having considered the arguments of the parties, relevant law, and being otherwise fully informed, the Court **DENIES** the Motion for Judgment of Acquittal, or in the Alternative, for New Trial.

## I.    BACKGROUND

On November 14, 2015, Mr. Guzman-Dominguez and his co-defendant Miguel Angel Rodriguez-Flores were arrested by the New Mexico State Police at the port of entry in Lordsburg, New Mexico. Inspectors found four cardboard boxes with cellophane wrapped brick-like packages in the trailer of Mr. Guzman-Dominguez's truck during a routine inspection. (Doc. 1.) Mr. Guzman-Dominguez was charged with: (1) conspiracy to distribute 5 kilograms and more of cocaine and 1 kilogram and more of heroin; (2) possession with intent to distribute 5 kilograms and more of a mixture and substance containing a detectable amount of cocaine; and (3) possession with intent to distribute 1 kilogram and more of a mixture and substance

containing a detectable amount of heroin. (Doc. 23.) After a four-day jury trial, Mr. Guzman-Dominguez was convicted on all three counts. (Doc. 120.)

At trial, Mr. Guzman-Dominguez requested a judgment of acquittal on all three counts at the close of the Government's case, alleging that the Government failed to provide any evidence of knowledge or intent. The Court denied a judgment of acquittal, concluding that a reasonable jury could find constructive knowledge and intent. (Tr. III at 289.) Mr. Guzman-Dominguez then filed this Motion for Judgment of Acquittal, or in the Alternative, for New Trial. Pursuant to Federal Rule of Criminal Procedure 29, Mr. Guzman-Dominguez argues that the Government did not present sufficient evidence for the jury to conclude that he intentionally involved himself in a drug conspiracy or had the purpose to possess drugs. (Doc. 136 at 1.) Pursuant to Federal Rule of Criminal Procedure 33, Mr. Guzman-Dominguez argues that (1) the verdict was against the weight of the evidence; (2) the admission of improper evidence regarding his invocation of his right to silence tainted the verdict; and (3) the jury instructions omitted a necessary element of the offense, resulting in harmful error. (Doc. 136 at 2.)

## II.    LEGAL STANDARD

Mr. Guzman-Dominguez requests that the Court use Rules 29 and 33 of the Federal Rules of Criminal Procedure to either enter a judgment of acquittal or order a new trial. Federal Rule of Criminal Procedure 29(a) provides in relevant part: "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a motion for judgment of acquittal challenging the sufficiency of the evidence, the standard is whether taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the

2

government, a rational finder of fact could reasonably have found the defendant guilty of the crime charged beyond a reasonable doubt. *See United States v. Burkley*, 513 F.3d 1183, 1188, 1190 (10th Cir. 2008); *United States v. Chavez-Palacios*, 30 F.3d 1290, 1293-94 (10th Cir. 1994); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In conducting this inquiry, the court may neither assess witness credibility nor weigh the evidence presented to the jury. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004); *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities, except guilt. *United States v. Serrata*, 425 F.3d 886 (10th Cir. 2005). Defendant argues that a conviction cannot be sustained by "piling inference on inference." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 2012).  A jury, however, is permitted to make reasonable inferences based on the evidence presented at trial; therefore, when reviewing a Rule 29 motion for judgment of acquittal, the trial court is required to examine the evidence in the light most favorable to the government and to draw reasonable inferences from this evidence. *See Jackson*, 443 U.S. at 319; *Jones*, 44 F.3d at 865.

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Civ. P. 33(a). "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

When a defendant does not object to alleged prosecutorial misconduct at trial, review is limited to plain error. *United States v. Anaya*, 727 F.3d 1043, 1053 (10th Cir. 2013) (citing *United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005); *United States v. Caballero*, 277 F.3d 1235, 1244 (10th Cir. 2002); *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998); *United States v. May*, 52 F.3d 885, 887 (10th Cir. 1995)). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fleming*, 667 F.3d 1098, 1003 (10th Cir. 2011) (citing *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008)). Fed. R. Crim. P 52(b).

When assessing a defendant's claim of prosecutorial misconduct, "the main issue to be decided is not the appropriateness of the prosecutor's comments, but, rather, whether the comments constitute misconduct rising to the level of plain error." *United States v. Franklin-El*, 555 F.3d 1115, 1124 (10th Cir. 2009). "This distinction is important because the line between proper and improper advocacy is inexact and even improper conduct does not in all cases warrant reversal of a conviction." *Id.* at 1124–25 (citing *United States v. Young*, 470 U.S. 1, 7 (1985)). The remarks of a prosecutor must be viewed in the context of the entire trial because "only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Lopez-Medina*, 596 F.3d 716, 738 (10th Cir. 2010) (internal quotation omitted).

The Tenth Circuit has emphasized that a new trial is warranted only when: (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his substantial rights. *See United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir. 2009). "The ultimate question is whether the jury was able to fairly judge the evidence in

4

light of the prosecutor's conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (quotations omitted). "A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict." *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). To warrant a new trial, "the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented." *Id*. (quotations omitted).

III.    **FACTS**

As it relates to the sufficiency of the evidence argument, the jury had the following facts at its disposal.

A.      *Cargo and Timing*

Homeland Security Seized Property Specialist David Barkley testified that Mr. Guzman-Dominguez's commercial vehicle contained approximately 47.9 kilograms of cocaine and approximately 5.24 kilograms of heroin. (Tr. III at 14-16.) Drug Enforcement Administration Agent Joseph Montoya, testifying as a drug trafficking expert, laid out the substantial value of the drugs. The bulk value of the cocaine and heroin seized was approximately $1,417,580.00 in Phoenix, Arizona, in November 2015. (Tr. III at 238-241.) The street value of the drugs increased to approximately $11,676,000.00 to $12,200,000.00 in Philadelphia, Pennsylvania (near the ultimate destination of the legitimate cargo), in November 2015. *Id*. The jury could reasonably infer that Mr. Guzman-Dominguez knowingly and voluntarily engaged in drug trafficking based on the significant increase of the value of the drugs in his truck as he progressed eastward.

Mr. Guzman-Dominguez, as the driver and owner of the truck, and Mr. Rodriguez-Flores, as the passenger who locked the cargo door, were the sole occupants of the truck at all

times leading up to the arrest. Mr. Guzman-Dominguez possessed the keys to the cargo area, but was initially unable to procure the appropriate key when asked by the inspector. (Tr. I at 92-93.) According to New Mexico State Police Commercial Vehicle Enforcement Inspector Jesus Salcedo, Mr. Guzman-Dominguez claimed that the keys were not his before finding the correct one to open the cargo door. *Id*. The testimony from the inspector indicates that the time it took Mr. Guzman-Dominguez to locate the key is unusual. The inspector said most drivers are anxious to resume their trips because their money earning capacity freezes during inspections. *Id*. Mr. Salcedo told Mr. Guzman-Dominguez to remain in the truck while he completed the inspection of the truck, but Mr. Guzman-Dominguez ignored those instructions and exited the vehicle more than once to interrupt the inspection. Mr. Guzman-Dominguez claimed he recently put new brakes on the truck and kept badgering the inspector with questions about his driving safety rating, delaying the inspection. *Id.* at 90-92. The inspector said there was no evidence of new brakes, contrary to Mr. Guzman-Dominguez's claim. *Id*. Inspector Salcedo cited each delay tactic as being outside the normal behavior of truck drivers, who generally see the inspection process as a hindrance. *Id*.

Commercial seals are placed on trucks with commercial cargo. (Tr. I at 157-160.) These seals protect commercial loads from tampering, and provide record of ownership and control. *Id*. The seal, along with a bill of lading, is provided by the company whose merchandise is in the truck. *Id*. at 163-164. The bill of lading is a record of what is placed in the truck. (Tr. III at 90-92.) The bill of lading is associated with the seal, and together they show what is in the truck and that it has been sealed in place. *Id*. Mr. Guzman-Dominguez failed to use the seal provided by the shipper, Mirachem, a cleaning chemical company. (Tr. II at 28.) Instead, he used a lock that he purchased himself, notwithstanding his claim to the inspector that the key was not his. *Id*.

This gave him complete control over the cargo and hid any evidence of tampering with the rear doors. The jury could have inferred that this would have allowed him to deposit the drugs in another location prior to dropping off the Mirachem load. The commercial seal was found on the floorboard in the cab in plain view. (Tr. I at 157.) The jury could have determined that it was implausible that Mr. Guzman-Dominguez would forget to place the seal on the back of the truck, contrary to industry practice, particularly when it was in plain sight.

The inspector was so shocked by Mr. Guzman-Dominguez's unusual logbook that he cursed during his initial review of it. (Tr. I at 103.) Mr. Guzman-Dominguez had taken seven days off schedule, but not during his scheduled 'home time.' (*Id*. at 105.) The inspector indicated this was a deviation from how truckers usually take time off. (*Id*. at 103-104.) Mr. Salcedo also testified that Mr. Guzman-Dominguez's logbook (required by federal regulation) was unusually short. (Tr. I at 77-83.) Logbooks ordinarily have a month's worth of records, but Mr. Guzman-Dominguez's logbook covered only two days of work. *Id*. The logbook showed that Mr. Guzman-Dominguez spent 24 hours off-duty in Phoenix, another odd detail. *Id*. Mr. Salcedo stated that it is unusual for truckers to spend that much time off-duty away from their hometowns. *Id*. at 79. The jury could have inferred that these unexplained periods would be consistent with drug trafficking efforts. *Id*.

Mr. Guzman-Dominguez and Mr. Rodriguez-Flores arrived at Mirachem to pick up the legitimate cargo at approximately 3:00 PM on November 13, 2015. (Tr. II at 132.) A purchase receipt shows that the co-defendants purchased gas at 4:14 PM. (Tr. IV at 77.)  GPS data shows that they were still in Phoenix at 7:56 PM. (Tr. III at 145-146.) Mr. Guzman-Dominguez's post-arrest statements simply do not square with the objective evidence regarding his location. Mr. Guzman-Dominguez said that loading the truck took twenty minutes at Mirachem, and never

explained the delay between picking up the legitimate cargo at Mirachem, fueling the truck, and departing Phoenix in his post-arrest interviews. (Tr. II at 107; Tr. IV at 101.) Mr. Guzman-Dominguez claimed that he picked up the cargo, got fuel, weighed the truck, took care of personal business and started driving. (Tr. IV at 211.) His post-arrest description of the day fails to account for the significant period between 4:14 PM and 7:56 PM.

At trial, Mr. Guzman-Dominguez claimed that he took the truck to Vazquez Diesel, the shop where he parks his truck when it is not in use, after getting fuel because the truck needed repairs, and that the repairs continued until about 7:00 PM. (Tr. IV at 109-110.) Mr. Guzman-Dominguez never mentioned the delay caused by mechanical problems during his post-arrest interview, despite being asked by two agents to account for his whereabouts. (Tr. IV at 162-164.) During Mr. Guzman-Dominguez's trial testimony, he was asked why he failed to say anything to the agents about the delay caused by the necessary repairs. Mr. Guzman-Dominguez said, "They didn't ask that of me. They asked me about the gas station and what I did after putting gas in and I drove." (Tr. IV at 109-110.) Mr. Guzman-Dominguez testified about the truck repairs only after the agents' testimonies and GPS and phone data revealed there was a substantial period of unexplained delay in Phoenix. Homeland Security Special Agent William Shafer testified that he could not recommend a controlled delivery of the drugs because Mr. Guzman-Dominguez and Mr. Rodriguez-Flores could not get their stories straight or establish credibility in their post-arrest interviews. (Tr. IV at 164.) A controlled delivery would have allowed law enforcement to uncover the recipient of the drugs, but because the co-defendants did not seem credible enough to participate in one, the agents were not able to move forward. Mr. Guzman-Dominguez's inconsistency between what he said to the agents post-arrest and what he said at trial could contribute to a jury's inference that his belated trial explanation of the time gap is not credible.

8

Mr. Salcedo testified that the Mirachem cargo was large (each container of cleaning solution weighed approximately 2,400 pounds) and arranged in such a way that it would be complicated and time-consuming to load the drugs in front of the cargo in the trailer. (Tr. III at 113-114.) A jury could infer that this substantial time gap and Mr. Guzman-Dominguez's extended off-duty time in Phoenix was used to procure and load the drugs.

**B.**     *Recorded Jail Calls*

During his post-arrest interview, Mr. Guzman-Dominguez denied having any knowledge of the drugs in his vehicle. (Tr. II at 38.) Within a week of the interview, he was making phone calls from the jail to his wife, suggesting that he did have knowledge about what was on the truck. (Tr. II at 168-169.) On November 20, 2015, Mr. Guzman-Dominguez made a call to his wife, saying, "Tell him that I need to speak with him that it is urgent for me to speak with him that I have information, uh, in regards to my case that if he wants me to deal with him, or for me to look for someone elsewhere to talk with." *Id*. It is unclear from the call transcript who "him" is, but a jury could infer that he had information specific to the drugs in his truck that he wanted to share with someone. Mr. Guzman-Dominguez then said, "If he doesn't ans--, uh and also try to get the DEA's number from the internet. … And call them and tell them that uh, if they have a number of an agent that speaks Spanish that we need to talk to them, that I will call him." Gov. Ex. 149A at 2. The jury could infer that these calls show that Mr. Guzman-Dominguez had at least some knowledge of the drugs in his truck that he was hoping to pass along to the Government.

IV.    DISCUSSION/ANALYSIS

    A.    *Rule 29 Motion for Judgment of Acquittal*

The Court can only enter a judgment of acquittal when the jury acted unreasonably; for example, engaging "in a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987).   Here, the Court has no basis to believe that the jury engaged in speculation on any of the counts, or acted unreasonably.

    *1.*    *Conspiracy*

Mr. Guzman-Dominguez contends that the Government did not present sufficient evidence for the jury to conclude that he intentionally involved himself in a drug conspiracy or had the purpose to possess drugs. (Doc 136 at 1.) However, the record demonstrates that Mr. Guzman-Dominguez's convictions were reasonable and supported by sufficient evidence. For a conspiracy conviction, the Government may supply circumstantial evidence because of the difficulty of obtaining direct evidence. *See United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005). Mr. Guzman-Dominguez drove a truck that contained approximately 47.9 kilograms of cocaine and approximately 5.24 kilograms of heroin, worth approximately $1,417,580.00 in Phoenix, Arizona. (Tr. III at 239.) The high value of the drugs could reasonably lead the jury to consider it unlikely that the drugs would be transported without the driver's knowledge, and a jury is permitted to make inferences about the driver's knowledge of drugs contained within the vehicle. *See United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006); *See also United States v. Cota-Meza*, 367 F.3d 1218, 1224 (10th Cir. 2004).

The government presented evidence that highlighted discrepancies between Mr. Guzman-Dominguez's statements about his whereabouts and his actual whereabouts. After being arrested,

Mr. Guzman-Dominguez stated that he picked up the cargo, fueled and weighed the truck, took care of personal matters, then started driving, but he failed to explain the extended time between loading the cargo and arriving at the checkpoint. (Tr. II at 33.) A reasonable jury could infer that this time gap was used to load the contraband, in furtherance of the conspiracy. The value of the drugs was such that it is unlikely that drug traffickers loaded the drugs into the vehicle without Mr. Guzman-Dominguez's knowledge. The DEA agent qualified as an expert on drug trafficking testified about unwitting couriers. (Tr. III at 257-259.)  Despite extensive experience, he had only heard of unwitting couriers in cases involving small amounts of marijuana, and those usually took place over border crossings, not on domestic routes. *Id*. The agent said that sending such large amounts of heroin and cocaine with an unwitting courier runs counter to the general practices of drug trafficking organizations. (*Id*. at 259.) Drug trafficking organizations would be unlikely to take the high risk of losing such valuable contraband. (*Id*.) An unwitting courier could change routes unexpectedly or lose the cargo at great cost to the trafficking organization. A rational jury could find beyond a reasonable doubt that Mr. Guzman-Dominguez was not an unwitting courier and that he intentionally involved himself in a drug trafficking conspiracy.

### 2.   *Purposeful Possession*

The Government presented evidence that Mr. Guzman-Dominguez had actual possession of the drugs. Mr. Guzman-Dominguez admitted to purchasing a lock and having his co-defendant place it on the cargo door. (Tr. II at 28.) Mr. Guzman-Dominguez placed a lock on the rear door instead of using the commercial seal provided by Mirachem, a deviation from industry practice. This deviation could support a jury's inference that Mr. Guzman-Dominguez had purposeful possession of the drugs. Further, as the owner and driver of the truck, he had actual control over the vehicle that carried the drugs. Because he had physical control over the truck, a

rational jury that found that Mr. Guzman-Dominguez was part of a drug trafficking conspiracy could also find that he had actual possession of the drugs.

When there is a large quantity of drugs present on a commercial vehicle, a "jury may infer intent to distribute." *Pulido-Jacobo*, 377 F.3d at 1131. Here, the amount of drugs in Mr. Guzman-Dominguez's vehicle was of such a high value and quantity that the jury could reasonably make the inference that Mr. Guzman-Dominguez intended to distribute the drugs.

**B.**     *Rule 33 Motion for a New Trial*

    *1.*     *The verdict is not against the weight of the evidence*

Mr. Guzman-Dominguez contends that the guilty verdict is against the weight of the evidence. In the Tenth Circuit, sufficiency of the evidence challenges made under Rule 29 or Rule 33 motions are reviewed under the same standard: whether taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government, a rational finder of fact could reasonably have found the defendant guilty of the crime charged beyond a reasonable doubt. *Compare United States v. Vallo*, 238 F.3d 1242, 1246-48 (10th Cir. 2001) (applying the sufficiency of the evidence standard to the adjudication of a Rule 29 motion), and *United States v. Zabriskie*, 415 F.3d 1139, 1144 (10th Cir. 2005) (applying the sufficiency of the evidence standard to the denial of a Rule 33 motion). Given the identical nature of review and the analysis above, there is no reason to determine that the jury had insufficient evidence upon which to render the guilty verdicts. The evidence and reasonable inferences drawn therefrom against Mr. Guzman-Dominguez are strong enough for a rational jury to render a verdict of guilt on all three counts. Mr. Guzman-Dominguez intentionally engaged in a drug trafficking conspiracy, and purposefully possessed drugs in his commercial vehicle with the intent to distribute to another person.

2.     *The Court's admission of Mr. Guzman-Dominguez's recorded jail calls was not improper*

At trial, Mr. Guzman-Dominguez objected to the admission of his recorded jail calls, alleging that admitting them was tantamount to making an improper comment on Mr. Guzman-Dominguez's refusal to speak with law enforcement. It is accurate that the Constitution forbids comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt, but that is not what happened in this case. *See Griffin v. California*, 380 U.S. 609, 615 (1965). Mr. Guzman-Dominguez's recorded calls were relevant and admissible as statements of a party opponent. *See* Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 801(d)(2). In his post-arrest interview, Mr. Guzman-Dominguez denied knowledge of the drugs in his vehicle. During his recorded jail calls to his wife, he said something inconsistent with the post-arrest interview: "Tell him that I need to speak with him that it is urgent for me to speak with him *that I have information*, uh, in regards to my case that if he wants me to deal with him, or for me to look for someone elsewhere to talk with." (Gov. Ex. 149A at 2.) (emphasis added). Mr. Guzman-Dominguez was referring to providing information to law enforcement agents, and went on to ask his wife to get the phone number for the Drug Enforcement Agency, saying that he urgently needed to give them information and wanted to cooperate. (*Id.*) A reasonable jury could infer that these calls show that he had more information to give, and are inconsistent with his prior statements.

The Government's presentation of these calls is not a statement about Mr. Guzman-Dominguez's silence toward law enforcement, but rather a demonstration of a prior inconsistent statement. His recorded phone calls were voluntarily given, and were used in a way that would allow the jury to infer from his untruthfulness that he knowingly transported drugs. Given the

above analysis, there was no error when the Court admitted into evidence Mr. Guzman-Dominguez's jail calls.

### 3. The jury instructions were not erroneous

Mr. Guzman-Dominguez argues that the instructions given to the jury were erroneous and constitute harmful error warranting a new trial, in light of the Tenth Circuit's recent holding in *United States v. Little*, No. 15-2019, 2016 WL 3902581 (10th Cir. July 19, 2016). The opinion in *Little* was issued on July 19, 2016, four days after the jury returned Mr. Guzman-Dominguez's verdict on July 15, 2016. *Little*, 2016 WL 3902581; (Doc. 120.)  Mr. Guzman-Dominguez claims that the Tenth Circuit now holds that the constructive possession instruction based on the Tenth Circuit pattern instructions given in this case was legally erroneous because it omitted "an essential component of the mens rea requirement, and suggests that constructive possession exists if a person can knowingly exercise dominion or control over an object, regardless of his actual intent." (Doc. 136 at 12.) Mr. Guzman-Dominguez's argument, however, does not take into consideration the entirety of the jury instructions. He evaluates Instruction 20 (regarding actual and possessive possession) out of context, ignoring the Court's full charge to the jury. (Doc. 123.)

In *Little*, the Tenth Circuit held that "constructive possession occurs when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." *Little*, 2016 WL 3902581 at *1. The Tenth Circuit determined that the Tenth Circuit Criminal Pattern Jury Instruction §1.31 (2011) was deficient because it failed to provide instructions regarding the mens rea requirement of the law of constructive possession. *Little* also held that omitting the mens rea element in that case was harmless because trial evidence demonstrated that the defendant intended to exercise control over the firearms at issue.

14

*Id.* at *1. Similarly, in this case, the evidence is of a substantial enough weight to demonstrate that Mr. Guzman-Dominguez intended to exercise control over the drugs in his commercial vehicle.

Mr. Guzman-Dominguez never objected to the jury instruction, and jury instructions must be read in the context of all of the instructions. *See United States v. Grissom*, 814 F.2d 577, 580 (10th Cir. 1987). Any deficiency regarding the mens rea of constructive and actual possession in Instruction Number 20 was remedied by Instructions 17 and 18, regarding the elements of the crime of possession with intent to distribute cocaine and heroin. (Doc. 123 at 21-22, 24.) The jury was repeatedly instructed that in order to find that Mr. Guzman-Dominguez was guilty of possession with intent to distribute a controlled substance, they must be convinced beyond a reasonable doubt that the defendant "knowingly or intentionally possessed a controlled substance as charged" and "the defendant possessed the substance with the intent to distribute it." (Doc. 123 at 21-22.) The Court also instructed the jury that to "'possess with intent to distribute' means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction." (Doc. 123 at 21-22.) Instructions 17 and 18, combined with Instruction 20, make it clear that the jury was properly instructed that to find Mr. Guzman-Dominguez guilty of both charges of possession with the intent to distribute, it must find that Mr. Guzman-Dominguez knowingly had the power and intent to exercise control or dominion over the cocaine and heroin as charged. (Doc. 123 at 22-23, 24.)

Given that Mr. Guzman-Dominguez did not object to these instructions at trial, the instructions are reviewed for plain error. *See* Fed. R. Crim. P.  52(b). *See also United States v. Smith*, 13 F.3d 1421 (10th Cir. 1994).  The Court's instructions to the jury did not constitute

15

plain error. Mr. Guzman-Dominguez fails to show plain error. When the instructions in dispute are read in context of all of the instructions, the jury was well informed of the mens rea requirement of possession with the intent to distribute. Further, *Little* was not current law at the time of the jury verdict. The jury decided the case four days prior to the *Little* decision, and under the plain error standard, the error is reviewed according to the law current at trial. *See Rosales-Miranda*, 755 F.3d at 1258. For there to be an error, it would have to be reviewed on the pre-*Little* standard.

Mr. Guzman-Dominguez has not shown that any error affected his substantial rights or was prejudicial. The jury found that Mr. Guzman-Dominguez knowingly had the power and intent to exercise dominion or control over the cocaine and heroin in his vehicle. Because there was no initial error, and because the Court repeatedly informed the jury of the mens rea requirement, Mr. Guzman-Dominguez cannot show that any deficient instruction affected any of his substantial rights.

In *Little*, the Court found that the instructions to the jury were erroneous, but given that the "overwhelming evidence supports a finding of actual knowledge," they were ultimately harmless. *Little*, 2016 WL 3902581 at *6. In this case, Mr. Guzman-Dominguez cannot show harmful error when the jury instructions are reviewed as a whole because as in *Little*, the overwhelming evidence supports a finding of constructive possession. There is also no evidence that a deficiency in the Court's jury instructions affected the "fairness, integrity, or public reputation of judicial proceedings." *Rosales-Miranda*, 755 F.3d at 1258. The Tenth Circuit Criminal Pattern Jury Instruction §131 has been in use over numerous trials, and the use of a slightly modified version of that instruction does not affect the fairness, integrity or public

reputation of this Court. Thus, the use of the modified version of the pattern instructions in this case did not constitute plain error.

## V.      CONCLUSION

For all of the forgoing reasons,

   **IT IS ORDERED THAT:**

  Defendant Mr. Guzman-Dominguez's Motion for Judgment of Acquittal, or in the Alternative, for New Trial is **DENIED.**

        _____
        **ROBERT C. BRACK**
        **UNITED STATES DISTRICT JUDGE**