## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CR 16-580 RB

MIGUEL ANGEL RODRIGUEZ-FLORES,

      Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Miguel Angel Rodriguez-Flores's Motion for Judgment of Acquittal, or in the Alternative, for New Trial.  (Doc. 134.) The Government opposes this motion. (Doc. 135.) Having considered the arguments of the parties, relevant law, and being otherwise fully informed, the Court **DENIES** this Motion for Judgment of Acquittal, or in the Alternative, for New Trial.

### I.     BACKGROUND

On November 14, 2015, Mr. Miguel Angel Rodriguez-Flores and his co-defendant Jose Remberto Guzman-Dominguez were arrested by the New Mexico State Police at the port of entry in Lordsburg, New Mexico. Inspectors found four cardboard boxes with cellophane wrapped brick-like packages in the trailer of Mr. Guzman-Dominguez's truck during a routine inspection. (Doc. 1.) Mr. Rodriguez-Flores was a passenger in the truck. (Doc. 1.) Mr. Rodriguez-Flores was charged with: (1) conspiracy to distribute 5 kilograms and more of cocaine and 1 kilogram and more of heroin; (2) possession with intent to distribute 5 kilograms and more of a mixture and substance containing a detectable amount of cocaine; and (3) possession with

intent to distribute 1 kilogram and more of a mixture and substance containing a detectable amount of heroin. (Doc. 23.) After a four-day jury trial, Mr. Rodriguez-Flores was convicted on all three counts. (Doc. 120.)

At trial, Mr. Rodriguez-Flores requested a judgment of acquittal on all three counts at the close of the Government's case, alleging that the Government failed to provide sufficient evidence to support the jury's finding of guilt on all counts. The Court denied a judgment of acquittal, concluding that a reasonable jury could find constructive knowledge and intent. (Tr. III at 289.) Mr. Rodriguez-Flores then filed this Motion for Judgment of Acquittal, or in the Alternative, for New Trial. Pursuant to Federal Rule of Criminal Procedure 29, Mr. Rodriguez-Flores argues that the Government did not present sufficient evidence for the jury to conclude that he intentionally involved himself in a drug conspiracy or had the purpose to possess drugs. (Doc. 134 at 2.) Pursuant to Federal Rule of Criminal Procedure 33, Mr. Rodriguez-Flores argues that the evidence was insufficient for all three counts. (Doc. 134.)

## II.    LEGAL STANDARD

Mr. Rodriguez-Flores  requests that the Court use Rules 29 and 33 of the Federal Rules of Criminal Procedure to either enter a judgment of acquittal or order a new trial. Federal Rule of Criminal Procedure 29(a) provides in relevant part: "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a motion for judgment of acquittal challenging the sufficiency of the evidence, the standard is whether taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government, a rational finder of fact could reasonably have found the defendant guilty of the

crime charged beyond a reasonable doubt. *See United States v. Burkley*, 513 F.3d 1183, 1188, 1190 (10th Cir. 2008); *United States v. Chavez-Palacios*, 30 F.3d 1290, 1293-94 (10th Cir. 1994); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In conducting this inquiry, the court may neither assess witness credibility nor weigh the evidence presented to the jury. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004); *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities, except guilt. *United States v. Serrata*, 425 F.3d 886 (10th Cir. 2005). Defendant argues that a conviction cannot be sustained by "piling inference on inference." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 2012). A jury, however, is permitted to make reasonable inferences based on the evidence presented at trial; therefore, when reviewing a Rule 29 motion for judgment of acquittal, the trial court is required to examine the evidence in the light most favorable to the government and to draw reasonable inferences from this evidence. *See Jackson*, 443 U.S. at 319; *Jones*, 44 F.3d at 865.

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Civ. P. 33(a). "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

Under Tenth Circuit precedent, sufficiency of the evidence challenges made under Rule 29 or Rule 33 motions are reviewed under the same standard. *Compare United States v. Vallo*,

238 F.3d 1242, 1246-48 (10th Cir. 2001) (applying the sufficiency of the evidence standard to the adjudication of a Rule 29 motion), and *United States v. Zabriskie*, 415 F.3d 1139, 1144 (10th Cir. 2005) (applying the sufficiency of the evidence standard to the denial of a Rule 33 motion).

## III.   FACTS

As it relates to the sufficiency of the evidence argument, the jury had the following facts at its disposal. Mr. Rodriguez-Flores and Mr. Guzman-Dominguez had an unusual relationship. Mr. Rodriguez-Flores claimed that he was under the tutelage of Mr. Guzman-Dominguez to learn how to drive commercial trucks, and had been riding along with him for about four months prior to their arrests. (Tr. II at 195.) Mr. Rodriguez-Flores did not have a commercial driver's license and could not drive the truck, yet Mr. Guzman-Dominguez paid him to ride along. *Id*. This payment relationship is odd, and supports a jury inference of conspiratorial relationship between the co-defendants. Mr. Rodriguez-Flores traveled with Mr. Guzman-Dominguez to Mexico and El Salvador in the days before their arrest. (*Id*. at 97-98.) This is outside the bounds of a typical employment or education situation, which can support a jury's inference of guilt. Drug Enforcement Administration Agent Joseph Montoya, testifying as a drug trafficking expert, described the role a ride-along passenger such as Mr. Rodriguez-Flores could play in a drug trafficking scheme. (Tr. III at 250-252.) The agent said that a ride along passenger could give updates about clearing checkpoints, contacts with law enforcement, and other issues that could arise along the route. *Id*. Because no other substantial explanation for Mr. Rodriguez-Flores's presence on the truck was provided, a jury could infer that he was present to provide drug trafficking support.

Homeland Security Seized Property Specialist David Barkley testified that Mr. Guzman-Dominguez's commercial vehicle contained approximately 47.9 kilograms of cocaine and

approximately 5.24 kilograms of heroin. (Tr. III at 14-16.) Mr. Rodriguez-Flores was a passenger on this vehicle, and was with Mr. Guzman-Dominguez when the drugs were placed into the cargo area of the truck. Agent Montoya laid out the substantial value of the drugs. The bulk value of the cocaine and heroin seized was approximately $1,417,580.00 in Phoenix, Arizona, in November 2015. (Tr. III at 238-241.) The street value of the drugs increased to approximately $11,676,000.00 to $12,200,000.00 in Philadelphia, Pennsylvania (near the ultimate destination of the legitimate cargo), in November 2015. *Id*. The jury could reasonably infer that Mr. Rodriguez-Flores and Mr. Guzman-Dominguez knowingly and voluntarily engaged in drug trafficking based on the significant increase of the value of the drugs in the truck as they progressed eastward.

Mr. Guzman-Dominguez and Mr. Rodriguez-Flores were the sole occupants of the truck at all times leading up to the arrest. The truck was empty when they arrived at Mirachem to load it with the legitimate cargo. (Tr. II at 100.) Mr. Guzman-Dominguez possessed the keys to the cargo door, and was initially unable to procure the appropriate key when asked by the inspector. (Tr. I at 92-93.) According to New Mexico State Police Commercial Vehicle Enforcement Inspector Jesus Salcedo, Mr. Guzman-Dominguez claimed that the keys were not his before finding the correct one to open the cargo door. *Id*. The testimony from the inspector indicates that the time it took Mr. Guzman-Dominguez to locate the key is unusual. The inspector said most drivers are anxious to resume their trips because their money earning capacity freezes during inspections. *Id*. Mr. Salcedo told Mr. Guzman-Dominguez to remain in the truck while he completed the inspection of the truck, but Mr. Guzman-Dominguez ignored those instructions and exited the vehicle more than once to interrupt the inspection. Mr. Guzman-Dominguez claimed he recently put new brakes on the truck and kept badgering the inspector with questions

about his driving safety rating, delaying the inspection. *Id*. at 90-92. The inspector said there was no evidence of new brakes, contrary to Mr. Guzman-Dominguez's claim. *Id*. Inspector Salcedo cited each delay tactic as being outside the normal behavior of truck drivers, who generally see the inspection process as a hindrance. *Id*.

Commercial seals are placed on trucks with commercial cargo. (Tr. I at 157-160.) These seals protect commercial loads from tampering, and provide record of ownership and control. *Id*. The seal, along with a bill of lading, is provided by the company whose merchandise is in the truck. *Id*. at 163-164. The bill of lading is a record of what is placed in the truck. (Tr. III at 90-92.) The bill of lading is associated with the seal, and together they show what is in the truck and that it has been sealed in place. *Id*. Mr. Guzman-Dominguez failed to use the seal provided by the shipper, Mirachem, a cleaning chemical company. (Tr. II at 28.) Instead, he used a lock that he purchased himself, notwithstanding his claim to the inspector that the key was not his. *Id*. Mr. Guzman-Dominguez had Mr. Rodriguez-Flores place the lock on the door at a rest stop outside of Phoenix. (Tr. II at 144-145.) This gave the co-defendants complete control over the cargo and hid any evidence of tampering with the rear doors. The jury could have inferred that this would have allowed them to deposit the drugs in another location prior to dropping off the Mirachem load. The commercial seal was found on the floorboard in the cab in plain view. (Tr. I at 157.) The jury could have determined that it was implausible that Mr. Rodriguez-Flores and Mr. Guzman-Dominguez would forget to place the seal on the back of the truck, contrary to industry practice, particularly when it was in plain sight.

Mr. Salcedo also testified that Mr. Guzman-Dominguez's logbook (required by federal regulation) was deficient. (Tr. I at 77-83.) Logbooks ordinarily have a month's worth of records, but Mr. Guzman Dominguez provided the inspector an unusually short log covering two days of

work. *Id*. The logbook showed that Mr. Guzman-Dominguez spent 24 hours off-duty in Phoenix, another odd detail. *Id*. Mr. Salcedo stated that it is unusual for truckers to spend that much time off-duty away from their home towns. *Id*. at 79. The jury could infer that these unexplained periods for the co-defendants are consistent with drug trafficking efforts. *Id*.

Mr. Guzman-Dominguez and Mr. Rodriguez-Flores arrived at Mirachem to pick up the legitimate cargo at approximately 3:00 PM on November 13, 2015. (Tr. II at 132.) A purchase receipt shows that the co-defendants purchased gas at 4:14 PM. (Tr. IV at 77.)  GPS data shows that they were still in Phoenix at 7:56 PM. (Tr. III at 145-146.) Mr. Rodriguez-Flores's post-arrest statements simply do not square with the objective evidence regarding his location on November 13, 2015. Mr. Rodriguez-Flores never explained the delay between picking up the legitimate cargo at Mirachem and departing Phoenix. (Tr. IV at 101.) Mr. Rodriguez-Flores claimed that they picked up the cargo, got fuel, weighed the truck, took care of personal business and started driving. (Tr. II at 100.) His description of the day fails to account for a significant period. Mr. Salcedo testified that the Mirachem cargo was large (each container of cleaning solution weighed about 2,400 pounds) and arranged in such a way that it would be complicated and time-consuming to load the drugs in the front of the cargo in the trailer. (Tr. III at 113-114.) A jury could infer that this substantial time gap was used to procure and load the drugs.

At trial, Mr. Guzman-Dominguez claimed that he and Mr. Rodriguez-Flores took the truck to Vazquez Diesel, the shop where he parks his truck when it is not in use, after getting fuel because the truck needed repairs, and that the repairs continued until about 7:00 PM. (Tr. IV at 109-110.) Mr. Rodriguez-Flores and Mr. Guzman-Dominguez never mentioned the delay caused by mechanical problems during their post-arrest interviews, despite being asked by agents to account for their whereabouts. (Tr. IV at 162-164.) During Mr. Guzman-Dominguez's trial

testimony, he was asked why he failed to say anything to the agents about the delay caused by the necessary repairs. Mr. Guzman-Dominguez said, "They didn't ask that of me. They asked me about the gas station and what I did after putting gas in and I drove." (Tr. IV at 109-110.) Mr. Guzman-Dominguez testified about the truck repairs only after the agents' testimonies and GPS and phone data revealed there was a substantial period of unexplained delay in Phoenix. Homeland Security Special Agent William Shafer testified that he could not recommend a controlled delivery of the drugs because Mr. Rodriguez-Flores and Mr. Guzman-Dominguez could not get their stories straight or establish credibility in their post-arrest interviews. (Tr. IV at 164.) A controlled delivery would have allowed law enforcement to uncover the recipient of the drugs, but because the co-defendants did not seem credible enough to participate in one, the agents were not able to move forward. Mr. Guzman-Dominguez's inconsistency between what he said to the agents post-arrest and what he said at trial could contribute to a jury's inference that his belated trial explanation of the time gap is not credible.

There is evidence that suggests that Mr. Rodriguez-Flores knew where the drugs were supposed to be distributed before he and Mr. Guzman-Dominguez departed. A Facebook chat conversation between Mr. Rodriguez-Flores and a third party reveals that he had plans to go to Michigan and Quebec, saying that he did not want to, but that "one has to make money then." (Tr. III  176-177.) A jury could infer that Mr. Rodriguez-Flores meant he would earn money distributing the drugs in those locations.

IV.    DISCUSSION/ANALYSIS

A.      Rule 29 Motion for Judgment of Acquittal

The Court can only enter a judgment of acquittal when the jury acted  unreasonably;  for example, engaging "in a degree of speculation and conjecture that renders its finding a

guess or mere possibility." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987).    Here, the Court did not find any indication that the jury engaged in speculation on any of the counts, or acted unreasonably.

### 1.    *Conspiracy*

#### a)      **Agreement**

Mr. Rodriguez-Flores contends that the Government did not present sufficient evidence for the jury to conclude that he intentionally involved himself in a drug conspiracy or had the purpose to possess drugs. (Doc 136 at 1.) However, the record demonstrates that Mr. Rodriguez-Flores's convictions were reasonable and supported by sufficient evidence. For a conspiracy conviction, the Government may supply circumstantial evidence because of the difficulty of obtaining direct evidence. *See United States v. Dazey*, 403 F3d 1147, 1159 (10th Cir. 2005) Mr. Rodriguez-Flores was the passenger on a truck that contained approximately 47.9 kilograms of cocaine and approximately 5.24 kilograms of heroin. (Tr. III at 238-241.) It was worth approximately $1,417,580.00 in Phoenix, Arizona, in November 2015. *Id.* A jury could infer that it is unlikely that drugs of such a high value would be transported without the knowledge and agreement of the vehicle's occupants.

"Mere presence at the scene of the crime does not, by itself, prove involvement but is a material factor." *United States v. Esparsen*, 930 F.2d 1461, 1464 (10th Cir. 1991). Here, Mr. Rodriguez-Flores was present at the scene during the trafficking, and engaged in behaviors that could lead a jury to reasonably be persuaded of his guilt. He went beyond merely being present when he secured the lock on to the truck in lieu of the industry standard commercial seal. Mr. Rodriguez-Flores admits that Mr. Guzman-Dominguez paid him to ride in the truck, an unusual arrangement for someone who did not have a commercial license and could not help drive the

truck. A jury could rationally conclude that this unusual payment arrangement is evidence of a conspiracy to engage in drug trafficking.

The government presented evidence that highlighted discrepancies between Mr. Rodriguez-Flores's statements about his whereabouts and his actual whereabouts. After being arrested. Mr. Rodriguez-Flores falsely stated that he and Mr. Guzman-Dominguez picked up the cargo, fueled and weighed the truck, took care of personal matters, then started driving, but he failed to explain the extended time between loading the cargo and arriving at the checkpoint. (Tr. IV at 214-216.) A jury is permitted to make an inference of guilt when a defendant makes false statements to the police. *See United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (permitting inference of guilt from false name given by defendant to police). A jury could make the inference that this time gap was used to load the contraband, in furtherance of the conspiracy.

The DEA agent qualified as an expert on drug trafficking testified about unwitting couriers. (Tr. III at 257-259.)  Despite extensive experience, he had only heard of unwitting couriers in cases involving small amounts of marijuana, and those usually took place over border crossings, not on domestic routes. *Id*. The agent said that sending such large amounts of heroin and cocaine with an unwitting courier runs counter to the general practices of drug trafficking organizations. (*Id*. at 259.) Drug trafficking organizations would be unlikely to take the high risk of losing such valuable contraband. (*Id*.) An unwitting courier could change routes unexpectedly or lose the cargo at great cost to the trafficking organization.  A rational jury could find beyond a reasonable doubt that Mr. Rodriguez-Flores and Mr. Guzman-Dominguez were not unwitting couriers and that they intentionally involved themselves in a drug trafficking conspiracy.

The Government presented evidence that Mr. Rodriguez-Flores knew where the drugs were being distributed before he left with Mr. Guzman-Dominguez. Mr. Rodriguez-Flores had a

Facebook chat conversation wherein he disclosed that he was going to Michigan and Quebec, saying that he did not want to, but that "one has to make money then." (Tr. III  176-177.) A jury could infer that he and Mr. Guzman-Dominguez intended to detour to Michigan or Quebec to offload the drugs before arriving in Pennsylvania. Mr. Rodriguez-Flores was also the one to place the lock on the vehicle rather than the commercial seal. (Tr. II at 144-145.) This is sufficient evidence for a rational jury to conclude that Mr. Rodriguez-Flores not only knew where the drugs were going, but that he intentionally protected them with a lock. This demonstrates awareness of the scope and objective of the conspiracy.

### b)       Essential Objectives

Mr. Rodriguez-Flores claims that the Government failed to produce evidence that he knew the essential objectives of the conspiracy. Mr. Rodriguez-Flores admitted that the truck was left unattended only when he and Mr. Guzman-Dominguez went to eat after loading the Mirachem cargo. (Tr. II at 143.) Given the value and quantity of the drugs, a jury could find it implausible that drug traffickers would secretly place the drugs on the truck without the knowledge of both of the occupants. It would be uncustomary behavior for drug traffickers to use unwitting couriers to move drugs of such high value across the United States. (Tr. III at 257-259.) The delay between loading the legitimate cargo and the time the defendants departed Phoenix remains unexplained. A rational jury could infer that this time was used to load the drugs, and that Mr. Rodriguez-Flores was aware of the scope of the conspiracy because of the lack of other explanations for this time gap.

There was no reason for Mr. Guzman-Dominguez to have paid Mr. Rodriguez-Flores to ride in his truck for more than four months. The defendants also took trips to Mexico and El Salvador together, something which exceeds the scope of an ordinary business relationship. (Tr.

11

II at 97-98.) Given the unlikeliness of drug traffickers to place drugs in the truck without the knowledge of the occupants, and the unusual relationship between the defendants, a rational jury could conclude that Mr. Rodriguez-Flores was generally aware of the scope and objective of the drug trafficking conspiracy.

### c)      Knowing and Voluntary Involvement

Mr. Rodriguez-Flores claims that the government proved mere association and unknowing involvement. A "jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1250 (10th Cir. 1991). Mr. Rodriguez-Flores acted in furtherance of the conspiracy when he placed the lock on the door instead of the Mirachem seal. (Tr. II at 28.) Further, the value and size of the drug cargo could lead a rational jury to conclude that Mr. Rodriguez-Flores had active knowledge of the drugs in the truck. His unusual payment and benefits from Mr. Guzman-Dominguez could also contribute to a jury's inference of guilt.

Mr. Rodriguez-Flores's Facebook chat statements acknowledging his impending trip to Quebec and Michigan to make money further support a jury's inference of guilt. This, along with his false exculpatory statements to law enforcement, could lead a rational jury to an inference that Mr. Rodriguez-Flores knowingly and voluntarily entered into the drug trafficking conspiracy.

### 2.      *Distribution Offenses*

Mr. Rodriguez-Flores claims that the Government failed to present evidence that he knowingly or intentionally possessed the drugs. (Doc. 134.) To obtain a conviction for possession with intent to distribute a controlled substance, the Government must prove: (1) the defendant knowingly or intentionally possessed a controlled substance; (2) the substance was in

fact a mixture and containing a detectable amount of cocaine or heroin, respectively; (3) the defendant possessed the substance with the intent to distribute it; and (4) the amount of the mixture and substance containing a detectable amount of cocaine was at least 5 kilograms or the amount and mixture and substance containing a detectable amount of heroin was at least 1 kilogram, respectively.

The Government presented evidence that Mr. Rodriguez-Flores took steps to secure the drugs in the cargo area of the vehicle, choosing to use a lock rather than the commercial seal. He maintained joint control over the keys to the lock. (Tr. II at 144-145.) This deviation from industry practice could lead a jury to infer that this step demonstrated purposeful possession of the drugs. As the person who placed the lock on the cargo door, Mr. Rodriguez-Flores and Mr. Guzman-Dominguez shared actual control over the vehicle that carried the drugs.

When there is a large quantity of drugs present on a commercial vehicle, a "jury may infer intent to distribute." *Pulido-Jacobo*, 377 F.3d at 1131. Here, the amount of drugs in Mr. Guzman-Dominguez's vehicle was of such a high value that the jury could reasonably make this inference. Agent Montoya's testified that the quantity of approximately 47.9 kilograms of cocaine and approximately 5.24 kilograms of heroin is more consistent with an intent to distribute rather than an intent to use the drugs for personal consumption. The drugs were in a commercial vehicle, which are often used to transport drugs across the United States. (Tr. III at 231.) Given the quantity and value of the drugs in the commercial vehicle, the jury could rationally find that Mr. Rodriguez-Flores  purposefully possessed the drugs and intended to distribute them.

**B.** **Rule 33 Motion for a New Trial**

Rule 33 and Rule 29 motions are adjudicated and reviewed under the same standard. *See United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). In the Tenth Circuit, sufficiency of the evidence challenges made under Rule 29 or Rule 33 motions are reviewed under the same standard: whether taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government, a rational finder of fact could reasonably have found the defendant guilty of the crime charged beyond a reasonable doubt. *Compare United States v. Vallo*, 238 F.3d 1242, 1246-48 (10th Cir. 2001) (applying the sufficiency of the evidence standard to the adjudication of a Rule 29 motion), and *United States v. Zabriskie*, 415 F.3d 1139, 1144 (10th Cir. 2005) (applying the sufficiency of the evidence standard to the denial of a Rule 33 motion). Given the identical nature of review and the analysis above, there is no reason to determine that the jury had insufficient evidence upon which to render the guilty verdicts. The evidence and reasonable inferences drawn therefrom against Mr. Rodriguez-Flores are strong enough for a rational jury to render a verdict of guilt on all three counts. Mr. Rodriguez-Flores intentionally engaged in a drug trafficking conspiracy and purposefully possessed drugs with the intent to distribute to another person. Thus, for the same reasons denying the motion to acquit, the motion for a new trial must be denied.

**V.** **CONCLUSION**

For all of the forgoing reasons,

**IT IS ORDERED THAT:**

Defendant Mr. Rodriguez-Flores's Motion for Judgment of Acquittal, or in the

Alternative, For New Trial is **DENIED.**

 

 

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**